UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN C. BUBIER, | ) |
|        *Plaintiff* | ) |
| v. | )   No. 2:12-cv-297-GZS |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security*,[1] | ) |
|        *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found that the plaintiff was capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the grounds that the administrative law judge improperly (i) evaluated his hearing impairment based on misinformation that he had the benefit of hearing aids and (ii) found his left-knee impairment nonsevere based on evidence not reviewed by any medical expert. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 12) at 3-8. I recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

requirements of the Social Security Act through December 31, 2010, Finding 1, Record at 21; that, through his date last insured, he had a severe impairment of moderate hearing loss, Finding 3, *id*. at 22; that, through his date last insured, he had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), except that high frequency hearing loss might limit some activities where excellent hearing was required, and he had to avoid situations with excessive background noise, Finding 5, *id*. at 23; that, through his date last insured, considering his age (63 years old, defined as an individual of advanced age, as of his date last insured), education (high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 26; and that he, therefore, was not disabled at any time from December 31, 2005, his alleged onset date of disability, through December 31, 2010, his date last insured, Finding 11, *id*. at 27.[3] The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform

---

[3] The administrative law judge mistakenly stated that the plaintiff alleged disability commencing on December 31, 2005. In fact, as the administrative law judge noted at the outset of his opinion, the plaintiff amended his onset date to November 1, 2009. *See* Record at 19, 158. Nothing turns on the error.

work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Hearing Impairment

In his statement of errors, the plaintiff focused on one argument regarding the administrative law judge's handling of his hearing loss: that the administrative law judge wrongly discounted his testimony regarding the severity of his hearing impairment, and the credibility of his testimony generally, on the basis of a mistaken belief that he used hearing aids, in contravention of his testimony that he did not use them. *See* Statement of Errors at 3-5. During oral argument, the plaintiff's counsel emphasized two additional arguments not raised in his client's statement of errors: that the administrative law judge (i) wrongly relied, in assessing the extent of the plaintiff's hearing loss, on the RFC assessment of Disability Determination

3

Services ("DDS") nonexamining consultant Robert Hayes, D.O., whose findings are unsupported by the underlying audiology report on which Dr. Hayes purportedly relied, and (ii) transmitted to the vocational expert present at hearing a confusing and, hence, fatally flawed hypothetical question based on a combination of the hearing limitations assessed by Dr. Hayes and those described in the underlying audiology report.

By failing to raise these arguments in his statement of errors, the plaintiff waived them. *See*, *e.g., Farrin v. Barnhart,* No. 05–144–P–H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

However, because counsel for the commissioner addressed the merits of the first new argument, arguing only that the second was waived, I consider, in the alternative, the merits of the first. I conclude that the administrative law judge did not improperly rely on the hearing limitations assessed by Dr. Hayes. In the underlying June 17, 2009, audiology report, based on testing of the plaintiff without the use of hearing aids, Kristie Iacuessa, Au.D., concluded that he demonstrated "bilateral mild precipitously sloping to profound sensorineural hearing loss[,]" that "[w]ord recognition (ability to hear clearly at most comfortable loudness) is good[,]" "[t]ympanograms are normal[,]" and that "[t]his loss will create difficulty in most situations, especially those with competing sound." Record at 269.

Based in part on review of that report, *see id*. at 307, Dr. Hayes concluded in an RFC opinion dated March 2, 2010, that the plaintiff's "[h]igh frequency hearing loss may limit some activities where excellent hearing is required" and that he should "[a]void situations with

excessive background noise[,]" *id*. at 304.  At oral argument, the plaintiff's counsel contended that the Hayes restrictions cannot be squared with the much more restrictive audiological testing findings.  However, as counsel for the commissioner rejoined, neither the plaintiff's counsel nor the administrative law judge is a medical expert, and the purported disconnect between the underlying report and the Hayes RFC opinion is not so glaring as to be apparent to a layperson, particularly given that Dr. Iacuessa found the plaintiff's word recognition "good."  Moreover, the opinion of a second DDS nonexamining consultant, Lawrence P. Johnson, M.D., who also had the benefit of review of the audiological report, *see id*. at 278, is consistent with that of Dr. Hayes.  In an RFC opinion dated July 17, 2009, Dr. Johnson found that the plaintiff could not do work that required precise hearing, such as the job of police dispatcher, and needed to avoid concentrated exposure to noise.  *See id*. at 276.  Therefore, even if the plaintiff had not waived this point by failing to raise it in his statement of errors, he would fall short of demonstrating reversible error on account of it.

Nor is the point raised in the statement of errors dispositive in the plaintiff's favor.

The plaintiff testified at his hearing on May 31, 2011, that he did not have hearing aids because he could not afford them.  *See id.* at 54-55.  The administrative law judge observed in his July 13, 2011, decision:

> At a review of systems on January 19, 2010, it was observed that the [plaintiff] wore a hearing aid.  He testified at the hearing that he did not wear a hearing aid because they were too expensive.

*Id*. at 25.  This was a reference to a January 19, 2010, progress note of Christopher D. Duncan, MS, PA-C, of GHP Waterboro Orthopaedics reflecting treatment for a complaint of left knee pain.  *See id*. at 313.  Duncan had stated therein: "The patient history sheet is signed, dated and

5

reviewed during the visit which is significant for hearing loss which he does wear a hearing aid."

*Id*.

By letter dated January 31, 2012, to the Appeals Council, the plaintiff's counsel submitted an addendum by Duncan stating:

> The [plaintiff] contacted our office on August 10, 2011 with concerns regarding a transcription of an office encounter with us on January 19, 2010. . . . After reviewing this and the notes the dictation should read[:] The patient history sheet is signed, dated and reviewed during the visit which is significant for hearing loss for which the patient does not wear a hearing aid.

*Id*. at 326, 329.

In its decision dated July 31, 2012, the Appeals Council acknowledged receipt of additional evidence but stated that "this information does not provide a basis for changing the Administrative Law Judge's decision." *Id*. at 2.

The plaintiff argues that, had the administrative law judge credited his testimony that he did not use hearing aids, he "would have been required to use a more restrictive RFC and [make] a finding of disability." Statement of Errors at 4. He notes that he testified to greater hearing impairment than found by the administrative law judge, for example, that he had difficulty hearing his counsel's voice even when alone with him in a small conference room because sound was bouncing off the walls and echoing. *See id*. He adds: "The harm caused by this negative credibility finding extended beyond the hearing impairment and clearly tainted the ALJ's opinion of the Plaintiff's other statements regarding his left knee impairment and his shoulder injury." *Id*. at 5. He concludes: "A more complete analysis, with a full review of the facts and proper credibility given to the Plaintiff, would necessarily have resulted in a more restrictive RFC." *Id*.

However, as the plaintiff's counsel acknowledged at oral argument, the degree of the administrative law judge's reliance on the discrepancy between the plaintiff's testimony that he

did not wear hearing aids and the Duncan progress note indicating that he did is unclear. From all that appears, the administrative law judge did not rely solely or even primarily on the discrepancy, which he merely noted without comment. *See* Record at 25. He seemingly placed greater weight on a conflict between the plaintiff's testimony and record evidence indicating that the plaintiff "lived a very active life despite [his] impairments[,]" *id*. at 23, and a lack of objective medical evidence supporting disabling impairments; for example, that his shoulder condition was improved with injections and pool exercise, *see id*. at 25. In any event, as discussed above, the administrative law judge adopted the findings of Dr. Hayes, who (i) accepted the plaintiff's representation that he did not wear hearing aids and could not afford them and (ii) took into account the underlying audiology testing results revealing the plaintiff's hearing deficits without benefit of hearing aids. *See id.* at 25, 307.[4]

I find no error in the administrative law judge's handling of the plaintiff's hearing impairment.

### B. Knee Impairment

The plaintiff next takes issue with the administrative law judge's finding that his knee impairment was nonsevere. *See* Statement of Errors at 5-8. He reasons that (i) the administrative law judge's reliance on the RFC assessment of Dr. Hayes was misplaced in that Dr. Hayes did not have the benefit of review of later submitted, material medical evidence, and (ii) the administrative law judge, as a layperson, was not qualified to determine without the benefit of the assistance of a medical expert that the plaintiff's nonsevere impairments limited

---

[4] The plaintiff also argued that, pursuant to Social Security Ruling 82-59 ("SSR 82-59"), he offered a justifiable reason not to have followed the prescribed treatment of hearing aids, namely, that he was unable to afford them and could not obtain them through free community resources. *See* Statement of Errors at 5. As counsel for the commissioner pointed out at oral argument, SSR 82-59 applies only when a claimant has been found disabled but denied benefits because of a failure to follow prescribed treatment. *See, e.g., Crocker v. Social Sec. Admin. Comm'r*, No. 1:09-cv-459-JAW, 2010 WL 3274509, at *6 (D. Me. Aug. 16, 2010) (rec. dec., *aff'd* Sept. 23, 2010).

him to medium exertional level work. *See id.* He adds that the administrative law judge's findings are, in any event, contradictory because, although he found the knee condition nonsevere, he stated that the plaintiff's nonsevere impairments warranted a limitation to medium work, necessarily indicating that the knee impairment imposed more than minimal restrictions on his ability to work. *See id.* at 6 & n.1.

> In his March 2, 2010, RFC assessment, Dr. Hayes stated, in relevant part:
>
> ADLs [activities of daily living] as reported to TP [treating physician] appear to be essentially unrestricted. 11/09 note refers to [plaintiff] doing frequent work with ladders. [Plaintiff] has been having some knee pain since 11/09, but there are no imaging studies to confirm diagnosis of arthritis and no weakness or instability is demonstrated on physical exam. It is expected that knee pain will improve and not impair function for 12 continuous months[.]

Record at 305. Dr. Hayes had the benefit of review of a January 15, 2010, progress note of treating physician Richard S. Tockman, M.D., in which Dr. Tockman noted that he found degenerative joint disease and hypertrophy on examination of the plaintiff's left knee but that it was "not clear what the diagnosis is for the knee pain or leg pain[.]" *Id*. at 297; *see also id*. at 307. Dr. Tockman added that he (i) suspected that the plaintiff had a muscle tear, (ii) would refer him to "Dr. Goudreau," and (iii) had offered the plaintiff x-rays, but the plaintiff wished to wait until Dr. Goudreau ordered them. *See id*. at 297.[5]

The plaintiff saw Duncan, an associate of Dr. Goudreau, on January 19, 2010. *See id*. at 313-15. Duncan ordered x-rays, which revealed "some moderate degenerative changes . . . in the lateral joint in the left knee though no significant valgus deformity." *Id*. at 314. He diagnosed degenerative joint disease of the left knee and chronic left knee prepatellar bursitis, as well as left hamstring tendonitis. *See id*. at 315. Duncan and, on one occasion, Dr. Goudreau saw the plaintiff again in follow-up for his left knee pain on April 27, 2010, May 11, 2010, June 15,

---

[5] Dr. Goudreau is Frank S. Goudreau, D.O., an orthopaedic surgeon whom the plaintiff had seen in 2005 for a shoulder injury. *See* Record at 317-23.

2010, and May 19, 2011. *See id*. at 309-12, 324-25. The plaintiff received treatment in the form of knee injections that he reported gave him significant relief. *See id*.

The plaintiff observes that Dr. Hayes does not appear to have seen the January 19, 2010, progress note describing findings on x-ray that confirmed the presence of degenerative joint disease of the left knee. *See* Statement of Errors at 7; Record at 307. He contends that, in the circumstances, the administrative law judge should have given no weight to the Hayes opinion and sought the assistance of a medical expert to reassess the severity of the knee impairment. *See* Statement of Errors at 7-8. He surmises that a medical expert who had the benefit of review of the evidence unseen by Dr. Hayes would have concluded, based on x-ray findings confirming the existence of degenerative joint disease, that he was limited to light or sedentary work. *See id*. at 8. He points out that, had he been found limited to a light or sedentary exertional level, he would have been determined to be disabled pursuant to Rule 201.06 or 202.06 of the so-called "Grid," Appendix 2 to 20 C.F.R. Part 404, Subpart P. *See id*.

"[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue,* Civil No. 09–220–B–W, 2010 WL 276280, at * 4 n. 3 (D. Me. Jan. 19, 2010).

The progress notes unseen by Dr. Hayes indicate that (i) the plaintiff received significant benefit from injections, *see* Record at 309-12, 324-25, (ii) as of June 15, 2010, he reported that he was "able to undergo his fairly active work day utilizing the stairs and ladders without difficulty" and was "very happy with his results thus far[,]" *id*. at 309, (iii) he did not seek treatment from that time until May 19, 2011, *see id*. at 324, (iv) and on May 19, 2011, he stated that "[h]e did well with interarticular steroid injection followed by a Synvisc-One injection into

9

his knee in June of 2010[,]" noted "significant improvement in his knee pain up until recently[,]" and stated that during the winter, when he was in Florida, "he was able to ride his bike, walk and exercise without any difficulties[,]" *id*. at 324. On May 19, 2011, the plaintiff received a knee injection with "[a]ctivity restrictions for 12 hours" and instructions to elevate and ice his left knee later that day. *Id*.

In the circumstances, the administrative law judge could make a commonsense judgment that, as of December 31, 2010, the plaintiff's date last insured for SSD benefits, his knee impairment remained nonsevere as earlier found by Dr. Hayes. *See, e.g., Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."); *Stanwood v. Bowen,* 643 F. Supp. 990, 991 (D. Me. 1986) ("Medical factors alone may be used only to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment. . . . [A]n impairment is to be found not severe only if it has such a minimal effect on the individual's ability to do basic work activities that it would not be expected to interfere with his ability to do most work.") (citations and internal quotation marks omitted).

That the administrative law judge limited the plaintiff to medium work based on the combination of his nonsevere impairments, which included restrictive lung disease and shoulder impingement as well as the knee impairment, *see* Record at 22-23, 25-26, does not necessarily contradict his finding that the knee impairment was nonsevere. An administrative law judge is required to include in an applicant's RFC the effects, if any, of nonsevere as well as severe

medically determinable impairments. *See* 20 C.F.R. § 404.1545(e); *Eshelman v. Astrue,* No. 06-107-B-W, 2007 WL 2021909, at *4 n.8 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007).

At oral argument, the plaintiff pointed to his testimony that he needed to alternate sitting and standing about every 20 minutes to half an hour, *see* Record at 64-66, as well as the very activities relied upon by the administrative law judge (climbing ladders, biking, *etc.*) as consistent with a restriction to no more than light work. These propositions are not self-evident. For example, the difference between light and medium work is in lifting/carrying capacity. *Compare* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.") *with id.* § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). I see no reason why the described activities would not also be consistent with the demands of medium work.

Finally, as counsel for the commissioner contended at oral argument, the administrative law judge can be said to have given the plaintiff the benefit of the doubt by assessing greater restrictions than the record evidence supports. The administrative law judge explicitly considered the plaintiff's subjective complaints to find him limited to medium work. *See* Record at 25-26. No medical source expressed an opinion that the plaintiff's knee impairment was severe and, as discussed above, the administrative law judge supportably found that evidence unseen by DDS consultants did not undermine their conclusion that the knee impairment was

nonsevere. In these circumstances, even if the court found error in the administrative law judge's handling of the plaintiff's knee impairment, any error would be harmless. *See, e.g., Gonsalves v. Astrue*, Civil No. 09-181-BW, 2010 WL 1935753, at *6 (D. Me. May 10, 2010) (rec. dec., *aff'd* June 16, 2010) (RFC error is "harmless when [the] finding [is] more favorable to [the] plaintiff than [the] evidence appears to support").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of June, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge